# EXHIBIT A

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHARTER COMMUNICATIONS ENTERTAINMENT I, LLC d/b/a CHARTER COMMUNICATIONS, <br><br> Plaintiff, <br><br> v. <br><br> JOHN DEBS, <br><br> Defendant. | CIVIL ACTION <br> NO. 04-40196-FDS |

## CERTIFICATE OF MARY P. PAUL

I, Mary P. Paul, being duly sworn, hereby depose and say:

1. I am over the age of eighteen (18) years and understand the obligations of an oath.

2. I am the Inventory Operations Manager and Security Supervisor for Charter Communications Entertainment I, DST d/b/a Charter Communications ("Plaintiff" or "Charter"), a Delaware Statutory Trust with a principal place of business at 95 Higgins Road, Worcester, Massachusetts and the successor to Charter Communications Entertainment I, LLC. At all times relevant to this action, Charter or its predecessor held a license, pursuant to M.G.L.c. § 166A, to construct and operate a cable television system in the town of Worcester, Massachusetts.

3. As the Inventory Operations Manager and Security Supervisor for Charter, I am personally familiar with the facts stated herein.

4. I submit this certificate in support of the Plaintiff's Motion for Judgment of Default Against the Defendant John Debs ("Defendant").

5. As the Inventory Operations Manager and Security Supervisor for Charter, I am responsible for combating theft of service in Charter's cable systems. I have been employed by Charter for over seventeen years.

6. As the Inventory Operations Manager and Security Supervisor for Charter, I obtained a copy of invoice information indicating that, through a series of transactions dated on or about February 19, 2002, between the Defendant and Modern Electronics, Inc., a mail order business operating out of Nebraska, the Defendant purchased two (2) cable theft devices, each known individually as a "BOSS V" decoder or descrambler for $195.00 and $98.00 respectively (plus shipping and tax). Also purchased were two (2) "Surge Protectors," for $19.00 each (plus shipping and tax). The two cable theft devices and surge protectors were shipped to the Defendant at 11 Foster Street #205, Worcester, Massachusetts, 01608.

7. The two cable theft devices, each referred to in the Modern Electronics, Inc. invoice individually as a "BOSS V," are decoder or descrambler devices that when used in conjunction with a converter are designed to defeat the scrambling technology of legal converters manufactured by Scientific-Atlanta, Inc.

8. Charter utilities cable television converters manufactured by Scientific-Atlanta, Inc. in its Worcester, Massachusetts cable system. These converters enable Charter's customers to access various levels of purchased and authorized cable services.

9. The use of a cable television converter in connection with the decoder or descrambler devices purchased by Defendant would allow him and/or others to obtain virtually all of the premium

and pay-per-view services offered over Charter's cable systems, including services and levels of service beyond the Defendant's authorized subscription level, without making payment to Charter.

10. When used by a cable system, authorized converters provide a security function by prohibiting the reception of non-purchased and unauthorized channels and services. However, when illegal decoder or descrambler devices (such as the devices purchased by Defendant) are used illegally and without authorization, all security functions of the authorized converter are "blown out" or defeated. As such, illegal or modified decoder or descrambler devices serve only one purpose, which is to defeat the security features of a cable system by decoding all scrambled channels. Unauthorized use of these devices within Charter's service areas enables a subscriber to obtain all encrypted levels of analog premium and pay-per-view of cable services without authorization from, and payment to, Charter. Therefore, the only purpose for the two cable theft devices purchased by Defendant is to effect the unauthorized reception of premium and pay-per-view cable services. No legitimate reason to own such decoder or descrambler devices exists.

11. Based on my knowledge, information and belief, the Defendant never has contacted Charter to notify it of the purchase and use, or assistance of others in the use, of the two cable theft decoder or descrambler devices purchased and received from Modern Electronics, Inc.

12. Based on my knowledge, information and belief, the average useful life of a cable theft device (such as the two purchased by the Defendant) is calculated to be seven years and has been known to exceed fifteen years. Therefore, the purchase and use of the devices by Defendant pose an ongoing and continuous harm to Charter.

13. The Defendant's current address at 107 Newton Avenue, N. Worcester, Massachusetts and the shipping address of 11 Foster Street, #205, Worcester, Massachusetts are within Charter's service area and have been since February 2002, when Defendant purchased the devices.

14. From February 2002 to February 3, 2004 (the date Charter upgraded its system in Worcester in such a manner as to defect the devices used to access Charter's premium services, but not pay-per-view services), Charter, or its predecessors, charged and continue to charge approximately $10.00 per month for each of the premium services identified below. The cable theft devices purchased by the Defendant were capable of descrambling and providing unauthorized access to each and all of these premium services for the 24-month period between February 2002 and February 2004. Therefore the approximate total value of premium services for this 24-month period is reasonably estimated to be at least $960.00 for each device, or $1,920.00 for both devices, as set forth below.

   a. The Movie Channel (approximately $10/month from February 2002 to February 2005) $10/month x 24 months = $240.00

   b. Showtime (approximately $10/month from February 2002 to February 2005) $10/month x 24 months = $240.00

   c. HBO (HBO Plus is included - approximately $10/month from February 2002 to February 2005) $10/month x 24 months = $240.00

   d. Cinemax (Moremax is included - approximately $10/month from February 2002 to February 2005) $10/month x 24 months = $240.00

Because the charge for premium services provides subscribers with access to such services on a monthly basis, Charter would have incurred this loss if the devices were used to view only a single program on that channel during the course of a month.

15. The cable theft devices purchased by Defendant are capable of descrambling all of Charter's pay-per-view programming services from February 2002 (the date of purchase) to the present.

Charter offers five pay-per-view channels to its subscribers in Worcester. The type and price of pay-per-view programming services offered by Charter from February 2002 to March 2005 are as follows:

a. Movies – approximately 15 different movies are shown monthly on two of the four pay-per-view channels for $3.99 per movie;

b. Movies - one movie is shown continuously in a 24-hour period for $3.99/day for approximately 30 movies per month on two of the four pay-per-view channels;

c. The Erotic Network – adult programming shown between 10:00 pm and 6:00 am for $6.99 per day; a different program is shown each night; and

d. Special Events – general concerts, wrestling and boxing events – prices vary between $5.95 and $59.95 per event.

As Inventory Operations Manager and Security Supervisor for Charter, and based on my knowledge and experience concerning theft-of-service matters as well as general subscriber pay-per-view usage, an approximate estimate of pay-per-view losses to Charter from the two cable theft devices purchased by Defendant are as follows: fifteen (15) movies per month ($3.99 x 30 [15 movies per month x 2 pay-per-view channels per month] x 38 months = $4,548.60); thirty (30) adult programming services per month ($6.99 x 30 per month x 38 months = $7,968.60); and at least two (2) boxing or special events per year in the 38-month period ($59.95 x 2 per year x 3 years = $359.70) for a total of $12,876.90, and a total of $25,753.80 for both devices over the 38-month period.

16.    Based on the estimates identified in paragraphs 14 and 15 above, the damages to Charter resulting from the use of the two cable theft devices since its purchase in February 2002, considering only the lost revenues from the unauthorized premium and pay-per-view programming services received by the Defendant, are $27,673.80. However, it should be noted that the cable theft devices at issue have not reached the end of their useful lives, have not been surrendered to Charter, are believed still to be in service, and still be capable of receiving unauthorized pay-per-view cable services.

5

17. In addition to lost revenues, Defendant's unlawful conduct injures Charter's good will, its ability to attract and finance the future acquisition of quality services, its future growth and profitability, and has caused (and continues to cause) Charter significant internal expenses related to pursuing this matter and providing necessary legal support.

18. Based on my knowledge, information and belief, the public also is injured by the Defendant's actions because cable theft creates an unfair subsidy to "freeloaders," paid for by honest subscribers, and results in lost revenues for the relevant municipalities.

19. The Defendant's theft of services causes further injury to Charter because the maintenance of unauthorized connections and the use of unauthorized equipment may result in signal "leakage," which violates Federal Communications Commission regulations, may result in unintended radio interference, and harms the quality of cable services received by lawful subscribers.

Signed under the pains and penalties of perjury this 18th day of May, 2005.

*/s/ Mary P. Paul*
Mary P. Paul
Inventory Operations Manager and
Security Supervisor
Charter Communications Entertainment I, DST
d/b/a Charter Communications

**EXHIBIT B**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHARTER COMMUNICATIONS ENTERTAINMENT I, LLC d/b/a CHARTER COMMUNICATIONS, : : : : | |
| Plaintiff, : | CASE NO. 04-40196-FDS |
| v. : | |
| JOHN DEBS, : : | |
| Defendant. : | |

AFFIDAVIT IN SUPPORT OF
<u>MOTION FOR JUDGMENT OF DEFAULT</u>

I, Christopher L. Brown, being duly sworn hereby depose and say:

1. I am over the age of eighteen (18) years and understand the obligations of an oath.

2. I am an attorney with the law firm of Murtha Cullina LLP, counsel for the Plaintiff Charter Communications Entertainment I, LLC d/b/a Charter Communications and, as such, I am personally familiar with the facts stated herein;

3. I submit this affidavit in support of the Plaintiff's Motion for Judgment of Default against the Defendant John Debs ("Defendant");

4. The Plaintiff Charter Communications Entertainment I, LLC d/b/a Charter Communications is a Delaware limited liability company with a principal place of business at 95 Higgins Street, Worcester, Massachusetts 01606;

5. The home address of the Defendant is 107 North Newton Avenue, Worcester, Massachusetts 01609;

6. The Complaint in the above-captioned action was filed in this Court on September 30, 2004;

7. The Defendant was served by Deputy Sheriff Kenneth R. Hannam by delivering in hand a true and attested copy of the Summons and Complaint at the abode of the Defendant on October 4, 2004 and by mailing a first class true attested copy to the abode of the Defendant on October 4, 2004, pursuant to Rule 4(c) of the Federal Rules of Civil Procedure;

8. In the Complaint, Plaintiff claims that the Defendant engaged in conduct and acts constituting two violations of 47 U.S.C. § 553(a) and two violations of 47 U.S.C. § 605(a) ;

9. On or about November 5, 2004, the Plaintiff moved for Entry of Default against the Defendant and sent a copy of such Motion to him at his current address;

10. Default was entered by this Court pursuant to Rule 55(a) of the Federal Rules of Civil Procedure on November 23, 2004, and, pursuant to that Order and Federal Rule of Civil Procedure 55, Plaintiff was directed to file a Motion for Judgment of Default within thirty days;

11. The Defendant filed an Appearance in the above-captioned action on November 24, 2004;

12. The Defendant filed a response on November 24, 2004 to the Complaint, which was due on or before October 25, 2004, as required by Rule 12(a) of the Federal Rules of Civil Procedure;

13. No proceedings have been taken by the Defendant in this action since his default was entered; and

14. To the best of my knowledge and belief, the Defendant is not in the military service and is not an infant or incompetent.

2

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 23rd DAY OF MAY, 2005.

_____
Christopher L. Brown

# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHARTER COMMUNICATIONS ENTERTAINMENT I, LLC d/b/a CHARTER COMMUNICATIONS, <br><br> Plaintiff, <br><br> v. <br><br> JOHN DEBS, <br><br> Defendant. | : <br> : <br> : <br> : <br> : CIVIL ACTION <br> : CASE NO. 04-40196-FDS <br> : <br> : <br> : <br> : <br> : <br> : |

## PLAINTIFF'S DAMAGES ANALYSIS

Plaintiff Charter Communications Entertainment I, LLC d/b/a Charter Communications ("Plaintiff" or "Charter") is a cable operator, within the meaning of 47 U.S.C. §§ 522(5) and 553(a), and provides cable service, within the meaning of 47 U.S.C. § 522(6) to the community of Worcester, Massachusetts. Complaint ¶¶ 6, 7. The Defendant John Debs ("Defendant") lives at 107 Newton Avenue, N. Worcester, Massachusetts, and at times relevant to the Complaint, only a particular level of service was requested from and authorized by Charter to be received at the Defendant's address. Complaint ¶ 8.

Upon information and belief, the Defendant ordered, purchased, received and possesses, possessed, used or assisted other persons in the use of one (1) modified cable television decoder or

descrambler, in order to effect the authorized use and interception of Charter's cable services, and this constitutes one (1) violation of 47 U.S.C. § 553(a) or one (1) violation of 47 U.S.C. § 605(a).[1]

The Federal Communications Act, as amended, provides a federal right of action to the Plaintiff to seek damages, actual or statutory, at the election of the aggrieved person, attorneys' fees and costs, as well as injunctive relief, pursuant to 47 U.S.C. § 553 and 47 U.S.C. § 605. Specifically, Subsection (c)(3)(A)(ii) of Section 553 and Subsection (e)(3)(C)(i)(II) of Section 605 of the Federal Communications Act, Title 47 of the United States Code, are the source of the Plaintiff's damages in this action. As set forth in the Complaint, Charter is seeking statutory damages in lieu of actual damages (as is the Plaintiff's right pursuant to the applicable statutes) from the Defendant in connection with the purchase of a device which has no other purpose but to effect the unauthorized use and interception of Charter's cable services.

Statutory damages for unauthorized reception of cable services, or assistance in the unauthorized reception of cable services, under Section 553(c)(3)(A)(ii) are recoverable in an amount set by the Court between $250 and $10,000 per violation.

Statutory damages under Section 605(e)(3)(C)(i)(II) are recoverable in an amount set by the Court between $1,000 and $10,000 per violation. Section 605 (a) prohibits, *inter alia*, the unauthorized interception of radio communications, which includes radio-based, satellite-delivered cable communications without regard to whether such communications travel over the wires of a cable system. See, e.g., International Cablevision, Inc. v. Sykes, 75 F.3d 123, 129-32 (2d Cir. 1996) (holding that both 47 U.S.C. § 605 and § 553 were applicable grounds for relief in

---

[1] Although this Court has previously held in Charter Communications Entertainment I, LLC v. Burdulis, Case No. 04-40098-FDS (D. Mass. March 22, 2005), that 47 U.S.C. § 605 does not apply to theft of cable services, Charter is in the process of appealing this Court's holding. As such, and as Charter believes that the application of 47 U.S.C. § 605 to theft of cable services is clear, its application is discussed herein.

2

cases involving the sale of unauthorized descramblers); 47 U.S.C. § 605(a), applying broadly to interceptions of "any interstate or foreign communication by . . . radio") (emphasis added); 47 U.S.C. §153 (33) (defining "communication by radio" to include "transmission by radio of . . . signals . . . of all kinds . . . .") (emphasis added).

The recovery of statutory damages was created because of the severity of the cable theft problem.

> The prohibition of pirating closed-circuit signals addresses the collective policy concerns of the continued viability of the cable service industry, not to mention, the disburdening of cable subscribers who are forced to subsidize the costs of cable pirating. H.R. 4103, 98th Cong., 2d Sess. (1984) *reprinted in* 1984 U.S. Code Cong. & Admin. News 4655, 4720. Moreover, the piracy statutes provide equitable relief and attorneys' fees to enhance vindication of this intangible property right.

Storer Cable Comm. v. Joe's Place Bar & Restaurant, 819 F. Supp. 593, 596 (W.D.Ky. 1993). Furthermore, statutory damages are the appropriate remedy when actual damages are difficult to prove as described in the Certificate of Mary Paul, Charter's Security Supervisor for the Northeast Region. See, e.g., King Vision Pay-Per-View LTD. v. Hansen, 2004 U.S. Dist. LEXIS 6262, at *6 (S.D.N.Y. April 5, 2004).

Therefore, the Plaintiff is entitled to, and is seeking, statutory damages in the amount of $10,000 for one (1) violation of 47 U.S.C. § 553(a) or $10,000 for one (1) violation of 47 U.S.C. § 605(a). See Community Television Systems, Inc. d/b/a TCI Cablevision of South Central Connecticut et al v. Angelina a/k/a Julie Caruso, 134 F. Supp. 2d 455 (D. Conn. 2000) (awarding the maximum in statutory damages against each defendant individually noting the complete lack of cooperation with the plaintiff); see also Charter Communications Entertainment I, LLC d/b/a Charter Communications v. Pantoja, slip op., Civil Action No. 01-40148 (D. Mass. December 5, 2001); Charter Communications Entertainment I, LLC d/b/a Charter Communications v.

3

Fairbanks, slip op., Civil Action No. 01-40149 (D. Mass. December 5, 2001); and Charter Communications Entertainment I, LLC d/b/a Charter Communications v. Duggan, slip. op., Civil Action No. 01-40093 (D. Mass. January 24, 2002).

In addition, the Plaintiff is entitled to its attorneys' fees and costs in prosecuting this action, in accordance with 47 U.S.C. § 553(c)(2)(C) and 47 U.S.C. § 605(e)(3)(B)(iii).  See Mountain Cable v. Choquette, 53 F. Supp. 2d 107, 116 (D. Mass. 1999).

> PLAINTIFF — CHARTER COMMUNICATIONS
> ENTERTAINMENT I, LLC d/b/a CHARTER
> COMMUNICATIONS
>
> By Its Attorneys,
>
> _____
> Burton B. Cohen, BBO# 656190
> Christopher L. Brown, BBO# 642688
> Murtha Cullina, LLP
> 99 High Street-20th Floor
> Boston, MA 02110
> (617) 457-4000

Dated: May 23, 2005

**EXHIBIT D**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHARTER COMMUNICATIONS ENTERTAINMENT I, LLC d/b/a CHARTER COMMUNICATIONS, <br><br> Plaintiff, <br><br> v. <br><br> JOHN DEBS, <br><br> Defendant. | : <br> : <br> : <br> : <br> : <br> : CIVIL ACTION NO. 04-40196-FDS <br> : <br> : <br> : <br> : |

<u>AFFIDAVIT FOR ATTORNEYS' FEES AND COSTS</u>

I, Burton B. Cohen, being duly sworn, depose and state the following:

1. I am over the age of eighteen (18) years and understand the obligations of an oath.

2. I am an attorney of record and the billing partner with the law firm of Murtha Cullina LLP, counsel for the Plaintiff Charter Communications Entertainment I, DST d/b/a Charter Communications ("Charter") and, as such, I am personally familiar with the facts stated herein.

3. Based upon the acts of the Defendant, John Debs, constituting two violations of 47 U.S.C. § 553(a) and two violations of 47 U.S.C. § 605 (e) (3)(B)(i) as more fully described in the Complaint, Charter is entitled to $40,000 in statutory damages against the Defendant for Defendant's violations of 47 U.S.C. § 553(a) and 47 U.S.C. § 605 (e) (3)(B)(i).

4. Plaintiff is entitled to its attorneys' fees and costs in this action, in accordance with 47 U.S.C. § 553(c)(2)(C) and 47 U.S.C. § 605(e)(3)(B)(iii).

5. The costs incurred by the Plaintiff in connection with this action are $150.00 for the filing fee and $47.20 for the deputy sheriff's fee for service of the Summons and Complaint against the Defendant, totaling **$197.20.**

6. For the purpose of the Motion for Judgment of Default, the Plaintiff seeks an award of attorneys' fees in the amount of **$4,967.00.**

7. In order to calculate attorneys' fees incurred with regard to the Defendant, annexed to this affidavit is a chart transcribing contemporaneous time records for work on this matter only. The chart delineates (a) the attorney or paralegal (attributed by their initials), (b) the date, (c) the time spent by each attorney and paralegal who worked on this matter (to the nearest tenth of an hour), and (d) a narrative of the work performed. The fees requested in this matter were calculated as follows:

Attorney Burton B. Cohen ("BBC") —-
    2005- 4.60 hours x $360.00 = $1,656.00

Attorney Robert J. Munnelly, Jr. —-
    2005- .90 hours x $295.00 = $265.50

Attorney Laura K. Norden ("LKN") —-
    2004- 1.40 hours x $225.00 = $315.00

Attorney Christopher L. Brown ("CLB") —-
    2004- .80 hours x $210.00 = $168.00
    2005- 3.65 hours x $220.00 = $803.00

Attorney Ryan M. Mihalic ("RMM") —-
    2005- 5.40 hours x $160.00 = $864.00

Paralegal Wendy Stine ("WCS") —-
    2004- 1.40 hours x $75.00 = $105.00
    2005- 9.30 hours x $85.00 = $790.50

8. The hourly rates charged to the Plaintiff for this litigation are the firm's standard hourly rates for 2004-2005 work. From my experience with attorneys' fees charged in Massachusetts litigation matters by attorneys throughout the state, it is my opinion that our hourly rates are comparable to the average rates of similarly experienced attorneys.

9. Attorneys' fees and costs associated with this matter total **$5,164.20**.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 13th DAY OF MAY, 2005.

_____
Burton B. Cohen

TRANSCRIPTION OF CONTEMPORANEOUS TIME RECORDS FOR CHARTER COMMUNICATIONS I, LLC
d/b/a CHARTER COMMUNICATIONS VS. JOHN DEBS

| ATTORNEY | DATE | TIME SPENT | NARRATIVE |
|---|---|---|---|
| LKN | 10/29/04 | 0.20 | Work on case strategy re: Debs. |
| CLB | 11/03/04 | 0.20 | Work on and file Motion for Default for Debs. |
| LKN | 11/03/04 | 0.20 | Work on default strategy re: Debs. |
| WCS | 11/03/04 | 1.00 | Work on Motion for Entry of Default re: Debs. |
| CLB | 11/04/04 | 0.20 | Debs: Motion for Default and settlement communications. |
| LKN | 11/04/04 | 0.20 | Work on default strategy re: Debs. |
| CLB | 11/05/04 | 0.10 | Work on Debs case. |
| LKN | 11/05/04 | 0.30 | Review court docket for pleading filings and work on record retrieval issues re: Debs. |
| WCS | 11/05/04 | 0.30 | Court docket retrieval issues re: Debs. |
| LKN | 11/06/04 | 0.10 | Work on default strategy and review court docket for status re: Debs. |
| LKN | 11/23/04 | 0.10 | Review court docket for default status re: Debs. |
| LKN | 12/01/04 | 0.20 | Work on record retrieval issues re: Debs. |
| LKN | 12/09/04 | 0.10 | Telephone call with M. Paul and work on record retrieval issues re: Debs. |
| WCS | 12/09/04 | 0.10 | Telephone conference with M. Paul and work on record retrieval issues re: Debs. |
| CLB | 12/22/04 | 0.30 | Debs: Settlement Communications and hearing request from US District Court. |
| WCS | 02/03/05 | 0.10 | Review court docket for information and updates regarding Debs. |
| BBC | 02/07/05 | 0.10 | Work on strategy re: case vs. Debs. |
| CLB | 02/28/05 | 0.10 | Debs-Settlement issues and Amended complaint. |
| BBC | 03/01/05 | 0.10 | Work on litigation issues and strategy for Debs. |
| CLB | 03/01/05 | 1.30 | Preparation of certification, joint statement and settlement proposal on Debs. |
| BBC | 03/02/05 | 0.20 | Work with Attorney Chris Brown re: strategy and issues for court conference-Debs. |
| WCS | 03/02/05 | 1.65 | Debs-Review certification; discussed who & where to sign (.15); Work on settlement proposal and stipulation of dismissal (1.50). |
| CLB | 03/02/05 | .15 | Debs-review statements for filing. |
| WCS | 03/03/05 | .15 | Work on Debs certification. |
| CLB | 03/03/05 | 2.00 | Hearing in Worcester Federal Court on Debs. |
| WCS | 03/04/05 | 1.00 | Work on attorneys' fees chart and affidavit re: Debs. |
| WCS | 03/18/05 | 1.50 | Work on Motion for Default Judgment and related exhibits re: Debs |
| BBC | 03/21/05 | 1.10 | Work on affidavit in support of attorneys' fees and costs (Debs). |
| WCS | 03/21/05 | 3.30 | Work on Debs' Motion for Default Judgment and related exhibits. |
| CLB | 03/22/05 | .10 | Communications with Ryan Mihalic and Burt Cohen re: Debs Motion for Default Judgment. |
| RJM | 03/22/05 | .40 | Review edits to Debs damages analysis; advise B. Cohen re: same. |

1

TRANSCRIPTION OF CONTEMPORANEOUS TIME RECORDS FOR CHARTER COMMUNICATIONS I, LLC
d/b/a CHARTER COMMUNICATIONS VS. JOHN DEBS

| ATTORNEY | DATE | TIME SPENT | NARRATIVE |
|---|---|---|---|
| RMM | 03/22/05 | 1.30 | Work on Motion for Judgment of Default filing (Debs). |
| WCS | 03/22/05 | 1.00 | Work on Debs' Motion for Default Judgment and exhibit D and chart. |
| RMM | 03/23/05 | .50 | Work on Debs' Motion for Judgment of Default and related documents. |
| WCS | 03/23/05 | .10 | Review court docket for information and updates re: Debs. |
| BBC | 04/01/05 | .10 | Work on issues for Debs Motion for Default Judgment. |
| RMM | 04/01/05 | 1.10 | Work on Motion for Judgment of Default filings (Debs). |
| RMM | 04/18/05 | .30 | Work on Motion for Judgment of Default (Debs). |
| RJM | 04/20/05 | .30 | Review Plaintiff's Damages Analysis in Debs. |
| RMM | 04/20/05 | 1.30 | Work on Motion for Judgment of Default (Debs). |
| RJM | 04/21/05 | .20 | Review final Debs damages analysis. |
| RMM | 04/21/05 | .40 | Work on Motion for Judgment of Default (Debs). |
| WCS | 04/26/05 | .50 | Update Attorneys' fees Affidavit and chart re: Debs. |
| BBC | 5/12/05 | .40 | Work on Motion for Default Judgment and Supporting Affidavits vs. JohnDebs. |
| RMM | 05/13/05 | .50 | Work on, finalize and file Attorneys' fees Affidavit re: Debs. |
| BBC | 05/13/05 | .60 | Work on and review Attorneys' fees Affidavit and Motion for Default Judgment re: Debs. |
| BBC | | 2.00 | Post-judgment activities. |

2