UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                              )
**CHARTER COMMUNICATIONS**           )
**ENTERTAINMENT I, LLC d/b/a**         )
**CHARTER COMMUNICATIONS,**        )
                                                              )     **Civil Action No.**
             **Plaintiff,**                              )     **04-40196-FDS**
                                                              )
             **v.**                                          )
                                                              )
**JOHN DEBS,**                                     )
                                                              )
             **Defendant.**                          )
_____)

**MEMORANDUM AND ORDER ON**
**PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

**SAYLOR, J.**

   This is a case alleging theft of cable television programming.  Charter Communications, a cable operator, alleges that defendant John Debs purchased a cable theft device designed to intercept communication services offered over cable systems and defeat scrambling or security measures, thereby obtaining premium cable television services for free.  Charter has obtained an entry of default and has moved for a default judgment.

   The issue in this case is not whether a default judgment is warranted, but rather the amount of damages to which Charter is entitled.  To arrive at an appropriate damage award, the Court must make a series of determinations about the facts of this case and an analysis of the requisite case law and statutory text.  First, the Court must determine whether Charter may recover damages under 47 U.S.C. § 605, which applies to the theft of radio communications, in

1

addition to or instead of damages under 47 U.S.C. § 553, which specifically applies to the theft of cable service. This issue is not merely academic, as § 605 provides for greater potential recovery of damages, and mandatory, rather than permissive, recovery of costs and attorneys' fees. The Court must then consider the amount of damages (either statutory or actual) to be awarded, whether § 553 caps statutory damages at $10,000 for all violations, and the extent to which attorneys' fees, costs, and injunctive relief should be awarded. These determinations are somewhat complicated because courts are in substantial disagreement on many of the basic principles governing the resolution of these questions.

For the reasons set forth below, the Court concludes that § 553 applies to this case, but not § 605; that § 553 provides a maximum statutory damage award of $10,000 for all violations combined; that the statutory damage award should be a reasonable estimate of plaintiff's damages without accounting for punishment or deterrence. The Court also finds that plaintiff is entitled to injunctive relief and an award of costs and reasonable attorneys' fees.

### I.    Background

The following facts are taken as true.[1] Charter is a cable operator that provides cable services to its customers. Compl. ¶ 7. Charter customers pay a monthly fee depending upon the level of service and amount of programming they select and purchase. Compl. ¶ 9. At all relevant times, Charter has offered basic cable channels, premium channels (such as Home Box Office,

---

[1] Because Debs has been defaulted for failure to plead or otherwise defend, he is "taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability as to which damages will be calculated." *Ortiz-Gonzalez v. Fonovisa*, 277 F.3d 59, 62-63 (1st Cir. 2002) (quoting *Franco v. Selective Ins. Co.,* 184 F.3d 4, 9 n.3 (1st Cir. 1999)). Before entering the default judgment, the Court may examine the complaint, taking all well-pleaded factual allegations as true, to determine its legal sufficiency. *Ramos-Falcon v. Autoridad de Energia Electrica*, 301 F.3d 1, 2 (1st Cir. 2002); *Quirindongo Pacheco v. Rolon Morales*, 953 F.2d 15, 16 (1st Cir. 1992).

2

Cinemax, and Showtime), and pay-per-view channels for movies and special events. Compl. ¶ 11. Subscribers pay fixed monthly fees for access to basic cable channels and premium channels, and pay one-time charges for access to pay-per-view selections, which vary according to the particular program selected. Compl. ¶¶ 9, 18.

Although the complaint does not so specifically state, it appears that Charter receives radio signals sent via satellites by broadcasters and converts them into cable signals for delivery to subscribers. *See, e.g., United States v. Norris*, 88 F.3d 462, 467 (7th Cir. 1996). The cable signals are typically delivered by a coaxial cable directly to the subscriber's home. *Id.*

Charter's cable signals for premium channels and pay-per-view services are electronically coded or scrambled so that they must be decoded by electronic decoding equipment for the signals to be viewed clearly on a television receiver or monitor. Compl. ¶ 12. To decode the signals, Charter provides subscribers of these services with electronic decoding equipment referred to as converters. Compl. ¶ 13. Charter programs each of its converters specifically to permit the subscriber to view only the level of service purchased. Compl. ¶ 14.

To receive pay-per-view service, the subscriber's converter box must be addressable. Compl. ¶ 16. The subscriber either telephones Charter and requests to view the specific movie or event or orders that movie or event using a remote control device. Compl. ¶ 17. Charter then programs the addressable converter box to descramble that movie or event, enabling the subscriber to receive a nonscrambled signal during the time of the broadcast. *Id.* The price of pay-per-view movies or events varies but ranges from $3.95 for certain movies to approximately $49.95 for certain sporting or other special events. Compl. ¶ 18. Charter subscribers are billed monthly for pay-per-view movies and events ordered during the previous month. *Id.*

Unauthorized decoders or scramblers are devices that have been designed or modified to defeat the scrambling or addressable security functions of a cable system, which are designed to ensure that only authorized customers receive services. Compl. ¶ 19.

In connection with *AT&T Broadband v. Modern Electronics, Inc. et al.,* Charter obtained business records of an entity doing business as Modern Electronics and its affiliated companies. Compl. ¶ 20. Those business records indicate that, on September 5, 2001, Debs ordered and purchased from Modern Electronics a cable theft device for use by himself or another for the purpose of unauthorized reception of communications services offered over Charter's and/or other cable systems. Compl. ¶ 21.

On September 30, 2004, Charter filed suit against Debs alleging one violation of 47 U.S.C. § 553(a) and one violation of 47 U.S.C. § 605(a). The clerk entered an order of default on November 23, 2004. Debs then filed an answer to the complaint on November 24, 2004, but did not appear at the Scheduling Conference held on March 3, 2005, and has not otherwise defended this action.

On May 24, 2005, Charter filed a motion for default judgment asking for statutory damages in the amount of $10,000 under 47 U.S.C. §§ 553(a) or $10,000 under 47 U.S.C. §§ 605(a); a permanent injunction prohibiting Debs from obtaining any unauthorized cable services from Charter; and attorneys' fees and costs.

In a supporting affidavit, Mary Paul, Inventory Operations Manager and Security Supervisor for Charter, estimates that, using one device, Debs stole $960 in premium

4

programming from February 2002 to February 3, 2004,[2] and $12,876.90 in pay-per-view programming from February 2002 to March 2005.[3] Paul estimates that the total amount stolen by one device is $13,836.90, and Charter contends that its damages as to both devices is double that amount, or $27,673.80. Charter nonetheless seeks only statutory damages in the maximum amount of $10,000. Charter also submitted an affidavit seeking $5,164.20 in attorneys' fees and costs.

## II.   Legal Analysis

### A.   Applicability of Sections 553 and 605

Charter requests damages under either 47 U.S.C. § 553 or 47 U.S.C. § 605.[4] Section 553, which provides that "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system," clearly applies to the theft of cable programming. 47 U.S.C. § 553(a)(1). Section 605, by contrast, prohibits the unauthorized interception or reception of *radio* communications. 47 U.S.C. § 605(a). Although Charter does not explain why § 605 is applicable to this case, cable operators in other cases have sought relief

---

[2] Charter's estimate is based on a cost of $10 per month for each of four premium channels: The Movie Channel, Showtime, HBO with HBO Plus, and Cinemax with Moremax.

[3] Charter upgraded its system on February 3, 2004, in such a manner as to detect the devices used to access to its premium services, but not pay-per-view services, so Charter's estimate for the value of pay-per-view service extends through the date of the affidavit. Charter's estimate for these services is based on the assumption that 15 movies are shown per month at $3.99 per movie on 2 channels ($3.99 x 15 movies per month x 2 channels x 38 months = $4,548.60); 30 adult programming services per month at $6.99 per day (30 days x $6.99 x 38 months = $7,968.60); and 2 boxing or special events per year at $59.95 per event (2 events x $59.95 x 3 years = $359.70).

[4] Specifically, the motion for default judgment seeks the following relief: statutory damages in the amount of $10,000 for the violation of 47 U.S.C. §§ 553(a) or 605(a); an order enjoining the defendant from "engaging in, aiding, abetting or otherwise promoting or supporting interception of the cable television programming, service or signal of Charter"; and attorneys' fees and costs in the amount specified in a supporting affidavit.

pursuant to § 605 under the theory that because the cable transmissions stolen had been previously transmitted to the cable operator via satellites, § 605 applied. *See, e.g., International Cablevision, Inc. v. Sykes*, 75 F.3d 123 (2d Cir. 1996).

For the reasons set forth in the Court's memorandum and order in *Charter Communications Entertainment I, LLC v. Thomas a/k/a Tom Burdulis*, slip op. 04-40098 (March 22, 2005), the Court concludes that § 605 does not apply to the theft of communications transmitted over a cable wire. Applying § 605 to cable theft would require the Court to ignore the plain meaning of the statutory text and strain its definitions beyond their ordinary meaning. The change in the form of transmission of the communication, from an airborne signal to a signal traveling over a cable wire, changes the applicability of the statute; when the communication is stolen as it is being transmitted over a cable wire, § 553, not § 605, applies.

  B.  <u>Analysis of Statutory Damages under § 553(c)(3)(A)(ii)</u>

    1.  <u>Methodology for Determining Statutory Damages</u>

Section 553 creates both civil and criminal penalties for the unauthorized reception of cable service. The statute is organized into three sections: § 553(a) defines the violation and relevant terms, § 553(b) provides criminal penalties, and § 553(c) provides civil penalties. Section 553(a) allows the plaintiff to seek either actual or statutory damages. Here, Charter has elected to pursue statutory damages under § 553(c)(3)(A)(ii).

That section provides that an aggrieved party "may recover an award of statutory damages *for all violations* involved in the action, in a sum of not less than $250 or more than $10,000 as the court considers just." (emphasis added). By contrast, pursuant to a 1992 amendment, § 553(b)(3), the criminal remedies section, provides that "[f]or the purposes of all penalties and

remedies established for violations of subsection (a)(1) of this section, the prohibited activity established herein as it appears to *each such device* shall be deemed a separate violation." (emphasis added). Courts have split on whether this amendment changed the way the civil penalties found in § 553(c) should be interpreted.

In *Mountain Cable Company v. Choquette*, 53 F.Supp.2d 107, 112 (D. Mass. 1999), the court found that although § 553(b) generally dealt with criminal penalties, the plain language of § 553(b)(3), referred to both "penalties and *remedies.*" (emphasis in original). According to the court, the use of the word remedies demonstrated Congress's intent to treat each device as a separate violation in calculating a civil penalty under § 553(c). *Id.* Accordingly, each violation pursuant to § 553(c)(3)(A)(ii) could receive a maximum fine of $10,000. *Id.* After making its finding, the court ultimately awarded a total of $3,000 for the defendant's three violations. Several other courts have also held that § 553(c)(3)(A)(ii) permits statutory damages for each violation.[5]

The Third and Ninth Circuits have disagreed with this approach. In *Continental Cablevision, Inc. v. Poll*, 124 F.3d 1044 (1997), the Ninth Circuit considered the argument that § 553(b)(3) permitted damages for each violation of § 553(c)(3)(A)(ii). The court noted that it "could not overlook the fact that Congress changed the statute on the criminal side . . . yet left unchanged the word "all" on the civil side of the statutory remedies." *Id.* at 1049. Because the statutory language in the civil remedies section clearly provided that $10,000 was the limit for "all

---

[5] *See e.g. Century ML-Cable Corporation v. Diaz*, 39 F.Supp.2d 121 (D.P.R. 1999) (concluding, without discussion, that the court can award a maximum of $10,000 for each violation of § 553(c)); *Columbia Cable TV Company, Inc. v. McCary*, 954 F.Supp. 124 (D.S.C. 1996) (citing § 553(b)(3) as providing authority to permit a $10,000 statutory damage maximum for each violation of § 553(c)); *Time Warner Cable of New York City v. U.S. Cable T.V., Inc.*, 920 F.Supp. 321, 328-9 (E.D.N.Y. 1996) (same); *Time Warner Cable of New York City v. Freedom Electronics, Inc.*, 897 F.Supp. 1454, 1459 (S.D. Fla. 1995) (same).

violations," the court refused to uphold the district court's award of $1,122,000 in damages against a large-scale manufacturer and distributer of illegal converters. *Id.* at 1050. The court also discounted plaintiff's arguments—that permitting unlimited actual damages while limiting statutory damages to $10,000 would lead to an absurd result and create a de facto licensing fee to violate the act—due to the "clearly expressed legislative intention to the contrary." *Id.* at 1049.

The Third Circuit agreed with *Poll* in *General Instrument Corp. of Delaware v. Nu-Tek Elec. & Mfg, Inc.*, 197 F.3d 83 (1999). In examining the statute, the court found that § 553(b)'s subtitle of "penalties for willful violations" made it clear that the subsection only pertained to criminal violations and applying its penalties to civil violations would run counter to the statutory construction. *Id.* at 95. According to the court, the plain meaning of § 553(c)(3)(A)(ii) "anticipates multiple violations and a single award of damages" and expressly limits statutory damages to $10,000. *Id.* at 94. [6]

This Court cannot ignore the express statutory language. Section § 553(c)(3)(A)(ii) clearly limits statutory damages to no more than $10,000 for all violations. Congress could have easily changed this provision to "for each violation" when it amended the statute in 1992, but chose not to. Moreover, § 553(b)'s provisions regarding imprisonment, and its separation from § 553(c), which is clearly titled "[c]ivil action in district court," makes it clear that § 553(b) was only intended to apply to criminal violations. Even if the reference in § 553(b)(3) to "penalties and remedies" could be construed as ambiguous, Congress's placement of the language within the

---

[6] Other courts which have reached the same result include: *Commonwealth v. Roselli*, 1997 WL 36957 *2 (E.D. Pa.) (noting that the express language in § 605(e)(3)(C)(i) that a party may recover up to $10,000 for each violation indicates that "Congress has no difficulty distinguishing "all" from "each"'); *Cablevision Systems New York City Corp. v. Lokshin*, 980 F.Supp. 107, 112 (E.D.N.Y. 1997) (stating that $10,000 is the maximum for all violations of § 553(c)); *Cablevision Systems Corp. v. Muneyyirci,* 876 F.Supp. 415, 422 (E.D.N.Y. 1994) (same).

8

criminal section of the statute affirms that it is only applicable to criminal violations. Nor is the result "absurd," in the sense that it is foolish or nonsensical, even if the amount of available statutory damages is relatively low.

In short, this Court agrees with the Third and Ninth Circuits, and the maximum amount of statutory damages for all violations is $10,000.

### 2. Amount of Statutory Damages

Charter seeks damages against Debs for a 24-month period dating from February 2002 to February 3, 2004, for theft of premium services and a 38-month period dating from February 2002 to March 2005 for theft of pay-per-view services. As explained in further detail in *Burdulis*, this Court has concluded that statutory damages should be awarded under § 553 in an amount equal to a reasonable estimate of actual damages.

Through the affidavit of Mary P. Paul, Charter alleges that the cost of illegally intercepted premium programming for that period was $40 per month ($10 each for The Movie Channel, Showtime, HBO, and Cinemax), for a total of $960 from February 2002 to February 2004 for the use of one device, and $1,920 for two devices. Charter further alleges, based on the "knowledge and experience [of Mary Paul] concerning theft-of-service matters as well as general subscriber pay-per-view usage," that Debs viewed $12,876,90 in pay-per-view services from February 2002 to March 2005 using one device, and $25,753.80 for both devices. The total amount of actual damages claimed by Charter is thus $27,673.80, although it seeks only statutory damages in the amount of $10,000.

The plaintiff has put forth a factual basis, albeit a relatively thin one, for its estimate of the defendant's illegal cable use. The Court questions whether the doubling of the estimated

damages, based on the use of two devices, is reasonable.  Debs apparently lives in an apartment, there is no evidence that any other person resided or frequented the apartment, and there is thus no reason to believe that both devices would be used simultaneously.  In any event, the Court concludes, based on the affidavit of Ms. Paul, that a reasonable estimate of damages would exceed $10,000, and it therefore awards the statutory maximum of $10,000.

### C. Injunctive Relief

Injunctive relief is available under § 553(c)(2)(A), which provides that the Court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain violations of subsection (a)(1) of this section."  Courts routinely enter injunctions preventing defendants from illegally intercepting cable.  *See e.g.*, *Naranjo*, 303 F. Supp. 2d at 50.  *But see Smith*, 141 F. Supp. 2d at 287-88 (refusing to issue injunction because plaintiff failed to establish irreparable harm and admitted to the court that it wanted an injunction so it could expose plaintiff to contempt sanctions).  Accordingly, Charter will be granted injunctive relief against Debs.

### D. Costs

Section 553(c)(2)(C) authorizes the court in its discretion to "direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails."  In this case, Charter has requested the costs of the filing fee and deputy sheriff's fee for service of the summons and complaint, as set forth in the amended affidavit for attorneys' fees and costs.  Both claims are appropriate, and accordingly Charter will be awarded costs against Debs in the amount of $197.20.

### E. Attorneys' Fees

10

Section 553(c)(2)(C) authorizes the court in its discretion to award reasonable attorneys' fees to a prevailing party. "Given the burden borne by cable operators to protect and redress their statutory rights through civil actions from what is also criminal conduct," it is appropriate to award attorneys' fees in these cases. *Diaz*, 39 F. Supp. 2d at 126.

The First Circuit follows "the 'lodestar' approach, which calculates reasonable attorneys' fees as 'the number of hours reasonably expended multiplied by a reasonable hourly rate.'" *Naranjo*, 303 F. Supp. 2d at 50 (quoting *Furtado v. Bishop*, 635 F.2d 915, 920 (1st Cir. 1980)). A reasonable hourly rate is measured according to the prevailing market rates in the relevant community and by considering factors such as "'the type of work performed, who performed it, the expertise that is required, and when it was undertaken.'" *Choquette*, 53 F. Supp. 2d at 114 (quoting *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 951 (1st Cir. 1984)). To determine the number of hours reasonably spent, the Court must subtract from the number of hours actually spent "'hours which were duplicative, unproductive, excessive, or otherwise unnecessary.'" *Id.* (quoting *Grendel's Den*, 749 F.2d at 950). This figure represents the lodestar; the Court may adjust the lodestar upward or downward to reflect other factors, including the result obtained. *Id.* at 114-15 (citing *Grendel's Den*, 749 F.2d at 951). "The First Circuit considers three meanings of the term 'results obtained': plaintiff's success on each claim, relief actually achieved, and the societal importance of the right which has been vindicated." *Id.* at 116.

Charter has requested $4,967.00 in attorneys' fees. Counsel for plaintiffs have provided detailed time records for their work on this case. Because the amount of time and resources spent on this case appears reasonable given the circumstances, the Court will grant Charter its requested attorneys' fees of $4,967.00.

**Order**

For the reasons set forth in the foregoing memorandum the Court ORDERS as follows:

1. Judgment of default shall enter for plaintiff.

2. Plaintiff is awarded $10,000 in damages and $5,164.20 in costs and reasonable attorneys' fees with interest as provided by law.

3. Defendant John Debs, and any person in active concert or participation with him, is hereby permanently enjoined from intercepting or receiving unauthorized cable television services, by any manner or method, including the use or modification of electronic equipment designed for the unauthorized interception of cable television services.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: July 8, 2005